111   3
s111  12

[Crim. No. 65.   Department Two.—January 13, 1S96.]

## THE PEOPLE, etc., Respondent, *v.* LOUIS STERNBERG, Appellant.*

Criminal Law—Procuring False Registration—Evidence—Corroboration of Accomplice—Accomplices in Distinct Crimes.—Upon a criminal prosecution for procuring the false registration of a voter in a precinct of which he was not a resident, the testimony of the voter as a prosecuting witness, showing that he was an accomplice of the defendant, and that defendant was guilty of the offense charged, is sufficiently corroborated by other testimony showing that the defendant was present at the making of the false affidavit for registration by the voter, and that defendant had subsequently made admissions of anticipated trouble on account of the false registration, and had made efforts and paid money to suppress the evidence of the prosecuting witness, though such admissions and efforts were testified to by other accomplices of the defendant in similar but distinct crimes, it being sufficient that they were not accomplices in the particular offense for which the defendant was under trial.

Id.—Information—Offense Committed by Deputy Registrar—Surplusage.—In an information stating that the defendant was a deputy registrar of voters, and, "as such deputy registrar," willfully, feloniously, and unlawfully procured and allowed the false registration of a voter, the charge that the defendant committed the offense "as such deputy registrar" is mere surplusage, and is meaningless in averment, and unnecessary in proof, the statute not being directed against official misconduct, nor limited in its application to public officers, but embraces within its terms "every person who willfully causes, procures, or allows" false registration.

Id.—Instructions—Matter of Fact—Accomplice—Request of Defendant—Harmless Error.—An instruction that the prosecuting witness,

---

*After the judgment in this case had been rendered, a petition for a hearing in Bank was filed, and, on the 13th of February, 1896, a hearing in Bank was ordered, solely on account of the doubt entertained by some members of the court as to whether or not the evidence of the defendant's accomplice was sufficiently corroborated.   After the hearing in Bank had been ordered, and on motion of the counsel for the defendant, the order was vacated and appeal dismissed.                    The Reporter.

according to his own testimony, was an accomplice of the defendant in the crime charged against him, and that a conviction could not be had upon his evidence alone, is favorable and not injurious to the defendant, and being given in accordance with the request of the defendant for a similar instruction, the defendant has no just cause of complaint for error thus invited; nor does the imputation that a crime had been committed, contained in the use of the word "accomplice," afford, under the circumstances, a legal grievance.

ID. — INSTRUCTION AS TO WANT OF EVIDENCE — ACCOMPLICES. — Where there is no evidence tending to show that witnesses who were accomplices of the defendant in distinct crimes of a similar character were his accomplices in the crime charged, it is not error for the court to instruct the jury that neither of such witnesses is an accomplice, and that their testimony is not subject to the rule mentioned to the jury as applicable to the testimony of accomplices.

ID. — PROVINCE OF JURY—INSTRUCTIONS AS TO MATTERS OF FACT—ABSENCE OF EVIDENCE. — While a judge may not instruct the jury upon a matter of fact, he is not forbidden, if the record justifies the assertion, to declare to the jury that there is a total absence of evidence upon a given proposition.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. W. T. WALLACE, Judge.

The facts are stated in the opinion of the court.

*Cross, Ford, Kelly & Abbott,* and *T. Carl Spelling,* for Appellant.

*W. F. Fitzgerald, Attorney General,* and *C. N. Post, Deputy Attorney General,* for Respondent.

HENSHAW, J. — Defendant was charged with procuring and allowing A. Gutman to be registered as a voter in the precinct register of a precinct in which he was not entitled to be registered. The prosecution was had under and by virtue of the provisions of the Purity of Elections act. (Stats. 1893, p. 24.) The offense charged comes within the purview of section 22 thereof.

Gutman, called by the prosecution, testified that defendant requested him to register from the Baldwin Hotel, so that he could vote for Mahoney. At the time of the request he resided and was registered in another

precinct, and these facts were known to defendant.
Witness acceded to defendant's request, and together
they went to the New City Hall. The witness there
told a registrar clerk in attendance that he desired to
change his residence to the Baldwin Hotel. Asked by
the clerk what floor his room was on, he answered the
fourth, when the defendant, standing by, corrected him,
and said the fifth. The clerk then asked the number of
his room, and, as the witness did not know, defendant
again answered for him.

Henry Burton was the registrar clerk. He identified
the affidavit of registration as being in his handwriting;
remembered the circumstances of defendant's presence
with Gutman at the time it was made; did not remember
defendant making answer to any of the questions pro-
pounded to Gutman; but would not accept the answers
of anyone except the affiant under such circumstances.

It was shown that Gutman did not reside at the hotel,
and that he did reside at 172 Clara street in San Fran-
cisco, and was registered in the precinct to which that
number belonged.

Gutman further testified that after the election he
met defendant in a saloon, and defendant urged him,
Samuel Lust, and David Newman, who were present, to
leave town and save him and themselves from getting
into trouble. He offered the three of them twenty dol-
lars for this purpose. Lust and Newman, after demur-
ring to the amount, accepted the money, and witness
was then given five dollars with which he was to come
to Oakland, where he was to remain for a few days.
The "trouble" which defendant anticipated was pun-
ishment for procuring the false registration of voters at
the Baldwin Hotel. Lust and Newman were allowed to
testify, over objection, that they too had falsely regis-
tered from the hotel at the instance and procurement
of defendant. Defendant also informed these witnesses
that warrants were issued for their arrest. The evi-
dence was properly admitted.

1. Against the judgment it is first urged that the

witness Gutman was defendant's accomplice in the alleged offense, and, that as there is no corroborative evidence in the case which, independent of Gutman's testimony, tends to connect defendant with the commission of the offense, a new trial must be granted.

This position is not tenable. There is first the fact testified to by Burton that defendant was present at the making of the false affidavit. While this fact, isolated and considered alone, is of small moment, since an innocent man might have occupied the same position, yet, when viewed in the light of later occurrences, it becomes a circumstance of serious significance. Those are the admissions of anticipated trouble by defendant because of his connection with the registration of defendant, testified to by Lust and Newman, his effort to suppress or eloign Gutman's evidence, and his payment of money for that purpose. One of the commonest forms of inculpatory evidence is testimony of just such acts by a defendant. It is always admissible and affords distinct and independent corroboration of the accomplice's statements. (*People* v. *Hong Tong,* 85 Cal. 173; *People* v. *Clough,* 73 Cal. 352; *People* v. *Grundell,* 75 Cal. 310; *People* v. *McLean,* 84 Cal. 482; *People* v. *Dixon,* 94 Cal. 258.)

Nor is the evidence open to the objection that Lust and Newman were themselves accomplices. It is true that a conviction may not be had upon the uncorroborated testimony of an accomplice. And a sufficient and independent corroboration is required, whether the principal evidence be that of one accomplice or of many. Three or thirty accomplices may not convict a man by their unsupported evidence more readily than may one; but the fact that by the evidence of Newman and Lust it appeared that each was an accomplice of defendant in a similar crime against the registration laws did not make them accomplices in the particular offense under investigation. In other words, conceding that the evidence showed that Newman had falsely registered from the Baldwin Hotel at the procurement of

defendant, and that Lust had done the same, not the slightest evidence was offered to show that these acts were other than separate and distinct crimes, in no way connected with the false registration of Gutman. Neither Lust nor Newman is shown to have participated in or even to have had foreknowledge of the Gutman affair, and, under such circumstances, while each was an accomplice with defendant in the crime attending his own false registration, neither was an accomplice with defendant and Gutman in the particular offense for which the former was under trial.

2. The information charged that defendant was a deputy registrar of voters, "and as such deputy registrar of voters, as aforesaid, did willfully, feloniously, and unlawfully procure and allow one A. Gutman to be registered," etc.

Defendant offered in evidence the record in the case of *Stilwell* v. *Evans*, then still pending and partly tried in the superior court of San Francisco, to show thereby that in a civil action defendant was called as a witness, and without objection answered to questions put him that he was a deputy registrar of voters. *Stilwell* v. *Evans, supra,* was a civil action to procure the cancellation of several thousand names alleged to have been illegally and improperly placed upon the voting register. (Pol. Code, sec. 1109.)

The contention here is that defendant is charged with having committed the offense in his official capacity, viz., as deputy registrar; that in the action of *Stilwell* v. *Evans, supra,* he had been called and testified that he was in fact a deputy registrar; that by section 32 of the Purity of Elections act (Stats. 1893, p. 26) proof of these facts constitutes a bar to this prosecution. That section is as follows:

"SEC. 32. A person offending against any provision of sections 19, 20, 21, 22, 25, 26, 27, 28, 30, and 31 of this act is a competent witness against another person so offending, and may be compelled to attend and testify upon any trial, hearing, proceeding, or lawful investiga-

tion or judicial proceeding, in the same manner as any other person. But the testimony so given shall not be used in any prosecution or proceeding, civil or criminal, against the person so testifying. A person so testifying shall not thereafter be liable to indictment or presentment by information, nor to prosecution or punishment, for the offense with reference to which his testimony was given, and may plead or prove the giving of testimony accordingly, in bar of such indictment, information, or prosecution."

This section was subjected to elaborate analysis, and a full exposition of its meaning was made, in *Ex parte Cohen*, 104 Cal. 524. It affords to one testifying immunity from prosecution or punishment for the offense with reference to which his testimony was given. In *Stilwell* v. *Evans, supra,* Sternberg does not appear to have been testifying concerning any offense, much less the one with which he is here charged; and the statement by him that he was a deputy registrar had no more significance than would his answer that his true name was Louis Sternberg. Moreover, the charge in the information that "as deputy registrar" defendant committed the offense is the merest surplusage. It was meaningless in averment and unnecessary in proof. The statute is not directed against official misconduct, nor limited in its application to public officers. "*Every person* who willfully causes, procures, or allows" false registration is punishable under it. Every act embraced within its terms may be done by a private citizen as well as by a public officer, and the official character of the offender under this law is of no possible importance.

3. In instructing the jury the judge said: "I instruct you, gentlemen, that Gutman, the man whom it is charged here Sternberg procured to falsely register, is an accomplice in this case." Elsewhere he said: "Now you are instructed further, as I have already stated, that Gutman is, according to his own testimony, an accomplice in the crime here charged against Sternberg."

This language, it is claimed, is violative of defend-

ant's constitutional right that the judge shall not charge
the jury with respect to matters of fact, but may state the
testimony and declare the law.   (Const., art. VI, sec. 19.)
In *People* v. *Sansome*, 98 Cal. 235, this court said, dis-
cussing an instruction, that "to have gone further and
have told them that Kelly was an accomplice would
have been clearly a charge with respect to matters of
fact, which is not allowed."   In the case at bar the lan-
guage quoted is part of instructions given by the court
declaring the law to the jury upon the propositions that
the testimony of an accomplice is to be viewed by them
with distrust, and that a conviction cannot be had upon
such evidence alone.   The instructions are full upon
the question, and the language criticised, so far from
being injurious to defendant, is more favorable than he
was entitled to.   For if Gutman was not an accomplice
the jury could have convicted without corroborating
evidence and were not required to view his evidence
with distrust.   By stamping him as an accomplice the
court, to the advantage of defendant, put his evidence
under all the disabilities which attach to testimony of
that character.   It is clear then that no injury could
have resulted to defendant.

We need not, however, uphold the language for this
reason alone.   So much has been said to show that in-
jury could not have resulted from the error claimed,
but, in addition, the error was expressly invited by de-
fendant himself.   This was natural, since the declara-
tion was entirely favorable to him.   He asked the court
to instruct, and at his request the court did instruct, the
jury that they could not find defendant guilty "unless
there was evidence, other than the evidence of Gutman,
which in itself and without the aid of the testimony of
Gutman tended to connect Sternberg with the commis-
sion of the offense charged.   This is itself a declaration
to the jury that Gutman was an accomplice.   And for
error thus invited defendant has no just ground of
complaint.   Nor does the imputation that a crime has
been committed, contained in the use of the word "ac-

complice," afford, under the circumstances, a legal griev-
ance.

4. The court further instructed the jury as follows:
"I repeat to you, gentlemen, that neither Lust nor New-
man is an accomplice—neither one of them is an accom-
plice—and their testimony is not subject to the rule
which I have mentioned as applicable to the testimony
of accomplices."

This language is excepted to upon the same ground
that it is an invasion of the jury's exclusive province of
determining facts. Were there evidence, even slight
evidence, tending to show that Newman or Lust was in
fact an accomplice, this objection would be well founded
and the error and injury would be manifest. That
Newman and Lust were not accomplices has already
been said, but, besides, there is no evidence in the
record which tends in any way to establish their com-
plicity in the Gutman crime. Had the court been asked
to give instructions upon the law of accomplices, as
affecting the testimony of Lust and Newman, it would
have been its duty to refuse them. In saying to the
jury that these men were not accomplices it did no
more than to declare that there was no evidence before
them tending to show that they were accomplices. While
a judge may not instruct upon a matter of fact, he is
not forbidden, if the record justifies the assertion, in
declaring to a jury that there is a total absence of evi-
dence upon a given proposition. Such are the circum-
stances of this case.

The judgment and order appealed from are affirmed.

McFarland, J., and Temple, J., concurred.